Filed 12/3/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CLAYBORN WASHINGTON,<br><br>Defendant and Appellant. | B299238<br><br>(Los Angeles County Super. Ct. No. ZM023624) |

APPEAL from an order of the Superior Court of Los Angeles County, Mark S. Arnold, Judge. Conditionally affirmed with directions.

Paul R. Kraus, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr., and Eric J. Kohn, Deputy Attorneys General for Plaintiff and Respondent.

————————

Clayborn Washington was convicted of five sexually violent offenses that took place in 1984, including rape by force of one victim and rape of an unconscious person, kidnapping, and two counts of sodomy as to a second victim. Prior to Washington's release, on May 14, 2014 the People filed a petition to commit Washington as a sexually violent predator (SVP) under the Sexually Violent Predator Act (SVPA; Welf. & Inst. Code, § 6600 et seq.).[1] After a court trial, the trial court found the petition to be true, declared Washington to be an SVP, and committed him to the California Department of State Hospitals for an indeterminate term.

On appeal, Washington contends the trial court violated the SVPA by failing to advise him of his right to a jury trial and to obtain a knowing and intelligent waiver of that right. The SVPA provides a statutory right to a jury trial, but the trial will be "before the court without a jury" if the defendant or petitioning attorney "does not demand a jury trial." Further, the statute does not provide for an advisement of the alleged SVP's right to a jury trial.[2] (§ 6603, subd. (f).) Because other involuntary commitment statutes provide for jury trial advisements and express jury waivers from the committees, but the SVPA does not, we conclude the Legislature did not intend to incorporate these requirements into the SVPA.

Washington contends in the alternative the failure of the court to obtain his knowing and intelligent waiver of his right to a jury trial violated his right to due process, and the SVPA's failure

_____

[1]    All statutory references are to the Welfare and Institutions Code, unless otherwise indicated.
[2]    We refer to the subject of an SVPA commitment hearing as either an alleged SVP or the defendant.

2

to provide protections for his jury trial right (including the denial of a jury trial absent an affirmative request by the alleged SVP), unlike statutes governing trials for other types of civil commitments, violated his right to equal protection under the federal and California Constitutions. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7.) Washington was not denied due process. As to Washington's equal protection claim, he did not assert it in the trial court, and we therefore do not have an adequate record on which to evaluate it on appeal. However, given the unusual circumstances of this case that would have made it difficult for Washington to raise his claim in the trial court, we decline to find forfeiture. We question whether the People will be able to show the dangerousness of SVP's is a constitutionally valid justification for differential treatment of alleged SVP's with respect to procedural protections of their right to a jury trial, as asserted by the People at oral argument, but we remand to the trial court to allow Washington to assert his equal protection challenge and the People to present this or another justification for the differential treatment of SVP's.

We conditionally affirm the order declaring Washington to be an SVP and committing him to the California Department of State Hospitals for an indeterminate term. On remand, Washington can raise his equal protection claim, and upon a showing SVP's and other civil committees are similarly situated as to their right to a jury trial, the People will have the burden to justify the differential treatment. If the trial court determines there is an equal protection violation, the court shall vacate the order declaring Washington to be an SVP and set the matter for a jury trial, unless Washington provides a knowing and intelligent waiver of his right to a jury trial after being personally advised of that right.

**FACTUAL AND PROCEDURAL BACKGROUND**

On May 14, 2014 the People filed a petition to commit Washington as an SVP upon his release from prison.  The petition attached evaluations from four psychologists, two of whom concluded Washington met the criteria for an SVP, and two of whom concluded he did not.

Washington refused to appear for his arraignment on May 16.  His attorney entered a denial of the petition at the hearing.  Washington appeared at a status conference by video conference from Coalinga State Hospital on May 20.  At a hearing on August 3 and 12, 2015, which Washington joined by video conference, the court found probable cause to believe Washington met the criteria for commitment as an SVP.

After multiple continuances, Washington appeared by video conference at a pretrial hearing on June 1, 2017.  The case was again continued many times for further pretrial hearings (some of which Washington attended, and others he refused to attend), then Washington appeared at a pretrial hearing on December 3, 2018 by video conference.  At the hearing, Washington agreed to a further pretrial hearing on March 4, 2019 with a trial set for April 24, 2019.  At the March 4 hearing, Washington appeared by video conference and again agreed to the April 24, 2019 trial date, with a final pretrial hearing on April 15.  There was no mention at the hearing whether the trial would be a court or jury trial.

The April 15, 2019 pretrial hearing was advanced to April 8.  Washington was not present because he was scheduled to be transported from Coalinga State Hospital to the Los Angeles County jail to appear in court.  At the hearing, the prosecutor stated the defense was "anticipating a court trial."  Defense counsel responded, "That is what is anticipated, yes."  The court

stated it was going to set the matter for a jury trial, indicating defense counsel could later state if he did not need jurors. The court ordered the parties to return for trial on April 24, 2019.

On April 8, 2019 Washington's attorney filed a pretrial motion to exclude specified evidence. The motion also requested the court instruct the jury with a modified version of CALCRIM No. 3454 that specifically defines a respondent's "ability to control" his behavior. Defense counsel submitted with his motion a "Proposed partial jury instruction—[CALCRIM No.] 3454." (Capitalization omitted.)

On April 24, 2019 Washington did not appear in court or by video conference. Washington's attorney reported that Washington was still at Coalinga State Hospital and did not want to be present at trial. Washington was placed on a speakerphone so the court could address him. The following colloquy took place:

"The court: Is it true that you do not wish to be present for this trial?

"[Washington]: Yes.

"The court: Alright. So you agree that your attorney will represent you in your absence?

"[Washington]: Yeah.

[¶] . . . [¶]

"The court: Do you waive and give up your right to be present?

"[Washington]: Yeah.

5

"The court:  And that's for the entire proceedings?

"[Washington]:  Say that again now?

"The court:  That's for the entire length of the proceedings?

"[Washington]:  Yeah.

"The court:  All Right.  You're sure?  Are you sure?

"[Washington]:  Positive.

"The court:  Okay.  Very good."

The court proceeded to hear Washington's motion to replace his appointed counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118.  After hearing from Washington and his attorney at a closed hearing, the court denied the motion.

The trial court then reported in open court that the attorneys had participated in a chambers conference to discuss scheduling.  Washington was present telephonically for the hearing in open court.  The court stated, "[S]ince there is no demand for a jury trial, the petition will be heard by me without the presence of a jury."  The court inquired whether "both sides agree with that," to which Washington's attorney responded, "Yes, your Honor"; the prosecutor also agreed.  The court did not advise Washington of his right to a jury trial or inquire of him whether he wanted a jury trial.  The minute order for the hearing states, "No Demand for Jury Trial by the Respondent.  Case will proceed as a Court Trial, non-appearance."

The trial commenced as a court trial on April 25, 2019. On April 30 the court found the petition to be true and declared Washington to be an SVP. The court committed Washington to the California Department of State Hospitals for an indeterminate term.

Washington timely appealed.

## DISCUSSION

A. *The SVPA*

"The SVPA authorizes the involuntary civil commitment of a person who has completed a prison term but is found to be a[n] [SVP]." (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 344.) An SVP is defined as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health or safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).)

"'[A] petition to request commitment . . . shall only be filed if [two] independent professionals . . . concur that the person meets the criteria for commitment . . . .' (§ 6601, subd. (f).) . . . [Citation.] . . . [Citation.] The court thereafter 'shall review the petition and shall determine whether there is probable cause to believe that the individual . . . is likely to engage in sexually violent predatory criminal behavior upon his or her release.' (§ 6602, subd. (a).) The court must order a trial if there is probable cause, and it must dismiss the petition if there is not. (*Ibid.*)" (*State Dept. of State Hospitals v. Superior Court, supra*, 61 Cal.4th at pp. 345-346; accord, *People v. Superior Court* (*Vasquez*) (2018) 27 Cal.App.5th 36, 43.)

7

An alleged SVP is entitled to a jury trial, but only upon a demand by the alleged SVP or his or her attorney.  Section 6603, subdivision (a), provides, "A person subject to this article is entitled to a trial by jury . . . ."  Subdivision (b), in turn, provides, "The attorney petitioning for commitment under this article has the right to demand that the trial be before a jury."  Further, "[i]f the person subject to this article or the petitioning attorney does not demand a jury trial, the trial shall be before the court without a jury."  (*Id.*, subd. (f).)

B.    *Standard of Review*

"We review questions of statutory construction de novo.  Our primary task 'in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose.  [Citation.] We consider first the words of a statute, as the most reliable indicator of legislative intent.  [Citation.]' [Citation.]  We construe the statute's words in context, harmonizing statutory provisions to avoid absurd results.  [Citation.]  If the statutory text is susceptible to more than one reasonable construction, we may consider extrinsic aids such as legislative history to facilitate our interpretative analysis."  (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1041; accord, *People v. Blackburn* (2015) 61 Cal.4th 1113, 1123 (*Blackburn*).)

C.    *Right to a Jury Trial in an SVP Proceeding*

Washington contends the trial court erred by failing to advise him of his right to a jury trial and by not taking an express personal waiver of that right, analogizing to the requirements in the statutory schemes for extending the involuntary commitment of a mentally disordered offender (MDO) (Pen. Code, § 2972,

subd. (a)(1) & (2)) and for extending the involuntary commitment of a person initially committed after pleading not guilty by reason of insanity (NGI) to a criminal offense (*id.*, § 1026.5, subd. (b)(4) & (5)).  Both the MDO and NGI statutes require the trial court to advise the committee of his or her right to a jury trial and for the committee to waive that right.  However, we agree with the People that, unlike the MDO and NGI statutes, the SVPA does not contain language requiring a jury trial advisement or a personal waiver of that right, evincing a legislative intent not to provide these procedural protections.

As the Third District explained in *People v. Rowell* (2005) 133 Cal.App.4th 447, 454 (*Rowell*), in concluding the SVPA does not require a trial court to take a personal waiver from a defendant of his or her right to a jury trial, "[T]he fact that the interests involved in involuntary commitment proceedings are fundamental enough to require a jury trial does not lead ineluctably to the conclusion that the waiver of a jury trial in such proceedings must be personal as in criminal prosecutions.  The fundamental right to a jury has been protected by section 6603, which grants the defendant the right to a jury trial upon demand.  But the SVP commitment proceeding is a civil proceeding, not a criminal one, and the full panoply of rights applicable in criminal cases do not apply."

Since *Rowell* was decided, the Supreme Court has clarified the rights of civil committees under the MDO and NGI statutes to procedural protections of their right to a jury trial.  In 2015 the Supreme Court in *Blackburn, supra*, 61 Cal.4th at page 1116, construed the jury trial provisions that apply to petitions to extend an MDO's commitment.  Penal Code section 2972, subdivision (a)(1), provides, "The court shall advise the person of the right to be represented by an attorney and of the right to a

jury trial.  The attorney for the person shall be given a copy of the petition, and any supporting documents."  Penal Code section 2972, subdivision (a)(2), provides further, "The trial shall be by jury unless waived by both the person and the district attorney."

In *Blackburn*, as here, defense counsel requested a bench trial without the trial court advising the defendant of his right to a jury trial or obtaining a personal waiver from the defendant of that right.  (*Blackburn*, *supra*, 61 Cal.4th at pp. 1116-1117.)  The court concluded the MDO statute required both an advisement of a defendant's right to a jury trial and a personal waiver of that right by the defendant.  (*Id*. at pp. 1120-1122.)  The court explained, "[T]he trial court must advise the MDO defendant personally of his or her right to a jury trial and, before holding a bench trial, must obtain a personal waiver of that right from the defendant unless the court finds substantial evidence—that is, evidence sufficient to raise a reasonable doubt—that the defendant lacks the capacity to make a knowing and voluntary waiver, in which case defense counsel controls the waiver decision."  (*Id*. at p. 1116.)  Further, a trial court's denial of these procedural protections is structural error requiring reversal of the order extending the commitment. (*Id*. at p. 1117.)

The *Blackburn* court reasoned, "The meaning of [Penal Code section 2972, subdivision (a),] is unambiguous.  The court must advise the defendant of the right to counsel and the right to a jury trial.  And the court must make this advisement to 'the person,' not to his or her attorney.  This plain meaning is confirmed by the very next sentence of section 2972(a), which distinguishes between 'the person' and his or her 'attorney.'  (*Ibid*. ['The attorney for the person shall be given a copy of the petition, and any supporting documents.'].)"  (*Blackburn, supra*, 61 Cal.4th at p. 1123.)  The

10

court also held the waiver provision in Penal Code section 2972, subdivision (a), "establish[ed] a default rule that a court must obtain a personal waiver of the defendant's right to a jury trial before holding a bench trial." (*Blackburn*, at p. 1125.) In reaching this conclusion, the court observed the statute's first two references to "'the person'" in Penal Code section 2972, subdivision (a)(1), refer specifically to the defendant, and not "'the defendant or his or her attorney.'" (*Blackburn*, at p. 1125.) The court found further that the third use of the term "'person,'" in Penal Code section 2972, subdivision (a)(2), requiring a jury waiver be made by "the person," must have the same meaning as the first two references in the same subdivision because "'it is generally presumed that when a word is used in a particular sense in one part of a statute, it is intended to have the same meaning if it appears in another part of the same statute.'" (*Blackburn*, at p. 1125.) The court reasoned the purpose of an advisement to a defendant "is to inform the defendant of a particular right so that he or she can make an informed choice about whether to waive that right," and "[i]f the Legislature had intended to allow counsel to waive a jury trial notwithstanding the defendant's wishes, it would not have needed to require the trial court to expressly advise the defendant." (*Ibid*.)

The Supreme Court in *People v. Tran* (2015) 61 Cal.4th 1160, 1163 (*Tran*) considered almost identical language (requiring a jury trial advisement and express jury waiver by the defendant) in the statutory scheme for extending the involuntary commitment of a person committed after pleading NGI to a criminal offense. (See Pen. Code, § 1026.5, subd. (b)(3) ["the court shall advise the person named in the petition of the right to be represented by an attorney and of the right to a jury trial"] & (4) ["[t]he trial shall be by jury unless waived by both the person and the prosecuting

11

attorney"].)  The court concluded, "We hold that this language has
the same meaning as the parallel language in the MDO statute:
The trial court must advise the NGI defendant personally of his or
her right to a jury trial and, before holding a bench trial, must
obtain a personal waiver of that right from the defendant unless
the court finds substantial evidence that the defendant lacks the
capacity to make a knowing and voluntary waiver, in which case
defense counsel controls the waiver decision."  (*Tran*, at p. 1163.)

Following the Supreme Court's decisions in *Blackburn* and
*Tran*, Division Two of this District in *Conservatorship of
Heather W.* (2016) 245 Cal.App.4th 378, 381 concluded, based on
language in the Lanterman-Petris-Short Act (§ 5000 et seq.; LPS
Act) that is similar, but not identical, to that in the MDO and NGI
statutes, that in a proceeding to reestablish a conservatorship, the
trial court must take a personal waiver of the conservatee's
statutory right to a jury trial.[3]  (*Conservatorship of Heather W.*, at
p. 381 ["In conservatorship proceedings pursuant to the LPS Act,
the trial court must obtain a personal waiver of a jury trial from
the conservatee, even when the conservatee expresses no
preference for a jury trial.  Absent such a waiver, the court must
accord the conservatee a jury trial unless the court finds the
conservatee lacks the capacity to make such a decision."]; see
*Conservatorship of Kevin A.* (2015) 240 Cal.App.4th 1241, 1244
[trial court erred in accepting waiver of jury trial by conservatee's

---

[3]     Section 5350 of the LPS Act incorporates the procedures for
the establishment, administration, and termination of a
conservatorship in the Probate Code.  Probate Code section 1827
provides for a right to a jury trial; section 1828, subdivision (a)(6),
requires the court to "inform the proposed conservatee," among
other things, of his or her right "to have the matter of the
establishment of the conservatorship tried by jury."

12

attorney over conservatee's objection]; but see *Conservatorship of C.O.* (Nov. 18, 2021, H047087) __ Cal.App.5th __ [2021 Cal.App. LEXIS 972], *16-17, 24-25, 37 [trial court's failure to personally advise proposed conservatee of right to a jury trial was statutory error, but error was harmless; and court's acceptance of counsel's waiver of jury trial right did not violate proposed conservatee's rights].)

Washington urges us to follow *Blackburn* and *Tran* and to interpret the SVPA to require the trial court to obtain a defendant's personal waiver of his or her right to a jury trial. However, the SVPA has markedly different language from the MDO and NGI statutes. The SVPA provides, similar to the MDO and NGI statutes, that a "person subject to this article" has a right to a jury trial. (§ 6603, subd. (a).) However, unlike the MDO and NGI statutes, the Legislature set the default as a court trial, not a jury trial, by specifying that if either the alleged SVP or petitioning attorney "does not demand a jury trial, the trial shall be before the court without a jury." (§ 6603, subd. (f).) Under the MDO statute, "[t]he trial shall be by jury unless waived by both the person and the district attorney." (Pen. Code, § 2972, subd. (a)(2); see *id*., § 1026.5, subd. (b)(4) [under NGI statute, "[t]he trial shall be by jury unless waived by both the person and the prosecuting attorney"].) The SVPA is not only silent as to a "waiver" by the defendant, but it expressly places the burden on the defendant or petitioning attorney to demand a jury trial. (§ 6603, subd. (f).) And unlike the MDO and NGI statutes, the SVPA does not require the court to advise the defendant of his or her right to a jury trial. Had Washington not been present at the hearing, we might have a concern whether he had an adequate opportunity to demand a jury trial, an issue we do not reach. But he was present at the hearing by telephone and failed to demand a

13

jury trial, despite the court's statement that "there is no demand for a jury trial" and the agreement by Washington's counsel to this statement.

Washington's effort to read into the SVPA a requirement that the court advise the defendant of his or her right to a jury trial is similarly unavailing. We recognize, as argued by Washington, the Supreme Court has held as to criminal prosecutions that "'a defendant's waiver of the right to jury trial may not be accepted by the court unless it is knowing and intelligent, that is, ""'made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it,"'" as well as voluntary ""'in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.'"""" (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 166.) However, an SVP proceeding is a civil commitment proceeding, not a criminal prosecution. (*Moore v. Superior Court* (2010) 50 Cal.4th 802, 818 (*Moore*) ["SVP proceedings are civil, not criminal, in nature."]; *People v. Allen* (2008) 44 Cal.4th 843, 860 (*Allen*) ["Proceedings to commit an individual as a sexually violent predator in order to protect the public are civil in nature."]; *Rowell, supra*, 133 Cal.App.4th at p. 451 ["An SVP commitment proceeding is not a criminal cause; it is civil in nature."].)

Therefore, certain protections afforded to defendants in criminal proceedings do not apply in SVPA civil commitment proceedings, including the Fifth Amendment guarantee against self-incrimination and the Sixth Amendment rights to self-representation and confrontation. (*Allen, supra*, 44 Cal.4th at pp. 860-861; see *People v. McKee* (2010) 47 Cal.4th 1172, 1193-1195 (*McKee*) [because SVPA is not punitive, it does not violate ex post facto clause]; *People v. Superior Court (Vasquez), supra,*

14

27 Cal.App.5th at p. 57 [because SVPA is not a criminal prosecution, Sixth Amendment right to speedy trial does not attach].)

However, as the Supreme Court observed in *Blackburn*, a civil commitment "'constitutes a significant deprivation of liberty.'" (*Blackburn, supra*, 61 Cal.4th at p. 1119.) In addition to the liberty interests at stake in a confinement, "'it is indisputable that involuntary commitment to a mental hospital . . . can engender adverse social consequences to the individual.'" (*Ibid*.) The Supreme Court has therefore "recognized that some constitutional protections available in the criminal context apply as a matter of due process to defendants in certain commitment proceedings." (*Id*. at p. 1119; see *Allen, supra*, 44 Cal.4th at p. 870 [defendant in proceeding under SVPA has due process right to testify over the objection of counsel].) But the *Blackburn* court based its decision on the MDO statute, and it did not reach whether an MDO has a constitutional right to a jury trial. (*Blackburn*, at p. 1120;[4] see

_____

[4]     Chief Justice Cantil-Sakauye in her concurrence in *Blackburn* observed, "No case has held that the federal or California constitution guarantees an individual a right to a jury trial in an MDO proceeding, and it would be difficult to reach such a conclusion. In general, the jury trial provisions of the United States and California Constitutions preserve 'the right to trial by jury as it existed at common law . . . and what that right is, is a purely historical question, a fact which is to be ascertained like any other social, political or legal fact. . . .' [Citations.] Commitment proceedings for MDO's, as defined by [Penal Code] section 2970, were apparently unknown at common law, and the parties have not directed us to any authority suggesting otherwise." (*Blackburn, supra*, 61 Cal.4th at pp. 1154-1155, fn. 5 (conc. & dis. opn. of Cantil-Sakauye, C.J.).)

15

*Rowell, supra,* 133 Cal.App.4th at p. 452 ["The right to a jury in SVPA proceedings is of statutory origin and character, rather than constitutional."].)

The legislative history of the SVPA supports our construction. The SVPA was enacted in 1995. (Stats. 1995, ch. 763, § 3, p. 5925.) The original version of section 6603, subdivision (a), provided, as it does today, that a defendant is entitled to a trial by jury (§ 6603, subd. (a)), and former subdivision (c) provided that "[i]f no demand is made by the person subject to this article or the petitioning attorney, the trial shall be before the court without jury." At the time the SVPA was enacted, the provisions for a jury trial advisement and personal jury waiver in the MDO, NGI, and LPS statutes were already in place. (See Stats. 1985, ch. 1418, § 1, pp. 5009-5010 [MDO statute]; Stats. 1979, ch. 1114, § 3, pp. 4051-4052 [NGI statute]; Stats. 1967, ch. 1667, pp. 4093-4094 [LPS Act].)[5] The Legislature's omission of

_____

[5]     The MDO statute was enacted in 1985. (Stats. 1985, ch. 1418, § 1, pp. 5009-5010.) The procedural protections afforded by the MDO statute were moved to Penal Code sections 2966 and 2972 in 1986. (Stats. 1986, ch. 858, §§ 4, 7, pp. 2953-2956.) Penal Code section 2972, subdivision (a), provided, as it does today, "The court shall advise the person of his or her right to be represented by an attorney and of the right to a jury trial," and further, "[t]he trial shall be by jury unless waived by both the person and the district attorney." (Stats. 1986, ch. 858, § 7, p. 2955.) Penal Code section 1026.5 governing NGI proceedings was enacted in 1979 and provided, as it does today in Penal Code section 1026.5, subdivision (b)(3), that the court shall advise the defendant "of his right to a jury trial," and in subdivision (b)(4) that "[t]he trial shall be by jury unless waived by both the person and the prosecuting attorney." (Stats. 1979, ch. 1114, § 3, p. 4053.) The LPS Act was

16

similar language in the SVPA supports our conclusion the Legislature intentionally established a different framework for a defendant's exercise of his or her right to a jury trial in an SVP proceeding, creating a presumption that the trial would be by the court unless demanded by the defendant. (See *Rashidi v. Moser* (2014) 60 Cal.4th 718, 726 [""""Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed.""""]; *People v. Arriaga* (2014) 58 Cal.4th 950, 960 [lack of requirement that a defendant obtain a probable cause certificate before appealing denial of postjudgment motion to vacate a conviction as compared to requirement for certificate to appeal prejudgment order evidenced a different legislative intent].)

Moreover, in 2006 the Legislature amended section 6604 of the SVPA to provide for an indefinite term of commitment, instead of a two-year term (see Stats. 2006, ch. 337, § 55, p. 2665), and the voters approved Proposition 83, similarly providing for an indefinite commitment (see § 6604.1, subd. (b)) and modifying the definition of an SVP (see § 6600, subd. (a)(1); Prop. 83, §§ 27, 28,

_____

enacted in 1967, including Welfare and Institutions Code section 5350 governing the appointment of conservators. (See Stats. 1967, ch. 1667, pp. 4093-4094.) Under the LPS Act, section 5350 incorporates the procedures for a conservatorship under the Probate Code, as it did in 1967. (Stats. 1967, ch. 1667, pp. 4093-4094.) Probate Code section 1828, subdivision (a)(6), provides in turn that the court must inform the proposed conservatee of his or her right to a trial by jury. This provision remains unchanged from when this section was incorporated into the Probate Code in 1990. (Stats. 1990, Ch. 79, § 3, p. 533.)

17

as approved by voters, Gen. Elec. (Nov. 7, 2006)). However, the Legislature (and the voters) did not modify the jury trial provisions in section 6603 in response to the 2005 holding in *People v. Rowell, supra*, 133 Cal.App.4th at page 450 that there is no statutory or constitutional right to a jury trial advisement or personal jury waiver under the SVPA. "'[W]hen, as here, the Legislature undertakes to amend a statute which has been the subject of judicial construction' 'it is presumed that the Legislature was fully cognizant of such construction.'" (*People v. Garcia* (2006) 39 Cal.4th 1070, 1087-1088; accord, *People v. Scott* (2014) 58 Cal.4th 1415, 1424 ["It is a settled principle of statutory construction that the Legislature "'is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof. [Citation.]" [Citation.]' [Citation.] Courts may assume, under such circumstances, that the Legislature intended to maintain a consistent body of rules and to adopt the meaning of statutory terms already construed."].)

D.      *Principles of Due Process Do Not Require a Trial Court To Advise a Defendant of His or Her Right to a Jury Trial or To Obtain an Express Jury Waiver in SVP Proceedings*

Washington contends that even if not required by the SVPA, due process requires the trial court to advise a defendant of his or her right to a jury trial and to take an express waiver of the defendant's right to a jury trial. There is no due process violation.[6]

---

[6] The People argue Washington has forfeited his equal protection challenge, but they do not assert forfeiture as to his due process claim.

18

Although we agree with *People v. Rowell, supra*, 133 Cal.App.4th at page 452 that there is no constitutional right in an SVP proceeding to a jury trial, "[b]ecause civil commitment involves a significant deprivation of liberty, a defendant in an SVP proceeding is entitled to due process protections." (*People v. Otto* (2001) 26 Cal.4th 200, 209 (*Otto*); accord, *Moore, supra*, 50 Cal.4th at p. 818; see *McKee, supra*, 47 Cal.4th at pp. 1188-1193 [indefinite commitment under SVPA does not violate federal due process, but the SVPA must be construed to mandate appointment of an expert for an indigent SVP who petitions the court for release to avoid a due process violation].) "A defendant challenging the statute on due process grounds carries a heavy burden. Courts have a '"duty to uphold a statute unless its unconstitutionality clearly, positively, and unmistakably appears; all presumptions and intendments favor its validity."'" (*Otto*, at pp. 209-210.)

The *Otto* court identified four factors for courts to consider in determining what process is due an alleged SVP: "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail; and (4) the dignitary interest in informing individuals of the nature, grounds, and consequences of the action and in enabling them to present their side of the story before a responsible government official." (*Otto, supra*, 26 Cal.4th at p. 210; accord, *Moore, supra*, 50 Cal.4th at p. 819.)

The first factor—the private interests at stake—weighs in favor of Washington. As the Supreme Court has observed, "commitment under the [SVPA] affects significant interests,

19

including liberty, reputation, and freedom from unwanted treatment.  These interests . . . weigh[] in favor of adopting all reasonable procedures to prevent their erroneous deprivation . . . ."  (*Moore, supra*, 50 Cal.4th at p. 821-822; accord, *Allen, supra*, 44 Cal.4th at p. 863.)  The Supreme Court explained in *Moore,* "the defendant in an SVP trial is entitled to a fair and accurate determination of his status as an SVP, under procedures assuring that his liberty and other personal rights are not erroneously impaired."  (*Moore*, at p. 824.)

As to the second factor, we consider whether additional procedural safeguards are necessary to prevent an erroneous deprivation of the defendant's liberty interests in the SVP proceeding.  (*Otto, supra*, 26 Cal.4th at p. 210.)  In *Otto*, the Supreme Court considered whether allowing multiple layers of hearsay to support commitment of an alleged SVP risked an erroneous deprivation of the defendant's rights.  The court found the victim's hearsay statements were reliable because they were corroborated by the defendant's convictions of the crimes to which the statements related, the defendant pleaded no contest to the prior crimes, and the defendant could present the opinions of two psychological experts in his favor and cross-examine any witnesses called by the prosecution.  (*Id*. at pp. 211-213.)  By contrast, in *Allen, supra*, 44 Cal.4th at page 866, the court concluded the defendant's due process rights were violated in an SVP proceeding where he was not allowed to testify over his counsel's objection because the defendant's testimony "typically will concern his or her conduct," and could "raise a reasonable doubt concerning the facts underlying the experts' opinions," even if the attorney believes the testimony would be more harmful than helpful.  (*Ibid*.)

20

Here, Washington was telephonically present at the hearing at which the court stated "there is no demand for a jury trial, [and] the petition will be heard by [the court] without the presence of a jury." The court then inquired whether "both sides agree with that," to which Washington's counsel responded in the affirmative. Washington could have, but did not, interject at this point. To the contrary, he had specifically waived his right to be present for the trial, agreeing his attorney would represent him in his absence.[7] Under these circumstances, there is minimal risk that Washington wanted a jury trial, but his attorney failed to request one on his behalf. Although an advisement by the court that Washington had a right to a jury trial would have ensured Washington was aware of that right, nothing in the record suggests his attorney did not advise him of his right to a jury trial. (See *Rowell, supra*, 133 Cal.App.4th at p. 454 [trial court properly accepted defense counsel's declaration that absent defendant wanted a court trial in SVP proceeding where defendant did not challenge his counsel's declaration].) As the *Blackburn* court noted, "[C]ounsel is presumed to know the defendant's rights and is obligated to advise the defendant accordingly." (*Blackburn, supra*, 61 Cal.4th at p. 1124.) Further, unlike *Allen, supra*, 44 Cal.4th at page 866, although the SVPA provides a defendant with the statutory right to demand a jury trial, Washington has not shown that he was more likely to be erroneously found to be an SVP if the determination was made by a court instead of a jury.

---

[7] Washington points out on appeal that he may have reasonably believed he was going to be afforded a jury trial in light of his counsel's filing of a pretrial motion to include specific jury instructions. This contention is not persuasive because Washington was present when the court made clear the case would proceed to a court trial and Washington's attorney agreed.

The People contend as to the third factor that if the trial court is required to take a personal waiver from a defendant, the court would first need to hold a hearing on whether the defendant has the capacity to personally waive his or her right to a jury trial. (See *Blackburn, supra*, 61 Cal.4th at p. 1130 [in commitment extension hearing under MDO statute, the trial court must elicit waiver decision from the defendant, but "if the trial court finds substantial evidence that the defendant lacks the capacity to make a knowing and voluntary waiver, then control of the waiver decision belongs to counsel"]; *People v. Ford* (2020) 56 Cal.App.5th 385, 392-393 [defendant in NGI proceeding to extend commitment has right to be present at pretrial hearing to determine whether he has capacity to personally waive right to jury trial].)  It is true that requiring an additional hearing to determine whether the defendant has the capacity to waive his or her right to a jury trial creates an additional burden on the trial court, but if a defendant's competence to provide a knowing and intelligent waiver is at issue, a hearing on the defendant's competence is a small price to pay to ensure the defendant's rights are protected.  And the court's advisement to a defendant of his or her right to a jury trial creates a de minimis burden.  Thus, this factor is neutral.

As to the fourth factor of Washington's dignitary interest, trial by the court instead of a jury would not affect a defendant's ability to understand the nature, grounds, and consequences of the commitment proceeding, nor would it prevent him from presenting his case why he should not be committed as an SVP.

On balance, in light of Washington's "heavy burden" to show a due process violation (*Otto*, supra, 26 Cal.4th at p. 209), the lack of an advisement of Washington's right to a jury trial and an express personal waiver of that right did not violate Washington's due process rights.

22

E.      *We Remand for Washington To Assert His Equal Protection Challenge*

Washington contends in the alternative that the structure of the SVPA in establishing a presumption of a court trial absent an affirmative request by the alleged SVP or his or her attorney for a jury trial, coupled with the lack of a required advisement of the right to a jury trial, violates equal protection principles.  "The concept of equal treatment under the laws means that persons similarly situated regarding the legitimate purpose of the law should receive like treatment.  [Citation.]  '"The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner."  [Citations.]  This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged."'"  (*People v. Morales* (2016) 63 Cal.4th 399, 408; accord, *McKee, supra*, 47 Cal.4th at p. 1202; *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.)  As the Supreme Court explained in *McKee*, "we ask at the threshold whether two classes that are different in some respects are sufficiently similar with respect to the laws in question to require the government to justify its differential treatment of these classes under those laws."  (*McKee*, at p. 1202.)

Washington contends that alleged SVP's are similarly situated to other persons who are involuntarily committed, citing to *McKee, supra*, 47 Cal.4th at page 1203, in which the Supreme Court concluded as to the alleged SVP's equal protection challenge to Proposition 83's provisions for indefinite commitment of SVP's and shifting of the burden to the SVP to prove, once committed, that he or she should be released, "MDO's and SVP's are similarly

23

situated for our present purposes." Washington argues he was likewise similarly situated to civil committees under the MDO, NGI, and LPS statutes and was entitled to the same procedural protections of an advisement of his right to a jury trial, and a default jury trial unless he personally waived his jury trial right. The People assert in response that Washington has forfeited his equal protection claim by not asserting it in the trial court. (See *People v. Alexander* (2010) 49 Cal.4th 846, 880, fn. 14 [defendant's failure to "raise his equal protection claim in the trial court" forfeited the argument]; *People v. Dunley* (2016) 247 Cal.App.4th 1438, 1447 ["an equal protection claim may be forfeited if it is raised for the first time on appeal"].)

In his reply brief, Washington contends forfeiture does not apply because his equal protection claim presents a pure question of law, relying on *In re Sheena K.* (2007) 40 Cal.4th 875, 888. In *Sheena*, the Supreme Court held the defendant did not forfeit her challenge to a probation condition as facially vague and overbroad because it presented "an asserted error that is a pure question of law, easily remediable on appeal by modification of the condition." In contrast to *Sheena*, however, determination of Washington's equal protection claim requires development of a record showing the People's justification for the differential treatment of SVP's with respect to jury trial protections.[8] As the Supreme Court

___

[8] The People do not challenge Washington's assertion that SVP's, MDO's, and NGI's are similarly situated for purposes of jury trial protections, instead arguing "the prosecutor did not have the chance to explain with supporting evidence why MDO and NGI proceedings warrant different procedures." We assume, but do not decide, that SVP's are similar to MDO's and NGI's for purposes of Washington's equal protection challenge, but not civil committees

24

explained in *McKee, supra*, 47 Cal.4th at pages 1207 to 1208, in remanding the case for a hearing to address the defendant's equal protection challenge, "We do not conclude that the People could not meet its burden of showing the differential treatment of SVP's is justified . . . . It must be shown that, notwithstanding the similarities between SVP's and MDO's, the former as a class bear a substantially greater risk to society, and that therefore imposing on them a greater burden before they can be released from commitment is needed to protect society. This can be shown in a variety of ways. For example, it may be demonstrated that the inherent nature of the SVP's mental disorder makes recidivism as a class significantly more likely . . . . Or the People may produce some other justification."[9] (Footnote omitted.)

_____

under the LPS Act. In *McKee, supra*, 47 Cal.4th at page 1209, footnote 11, the Supreme court concluded that SVP's were similarly situated to MDO's and NGI's, but not civil committees under the LPS Act, explaining, "Because these SVP's, MDO's, and NGI's more closely resemble one another than they do those persons committed under the LPS Act, it is appropriate on remand to focus on these groups rather than on those persons committed under the LPS Act in assessing McKee's equal protection claim."

[9]     On remand, the trial court held a 21-day evidentiary hearing with expert testimony and documentary evidence on whether the disparate treatment of SVP's could be justified. (*People v. McKee* (2012) 207 Cal.App.4th 1325, 1330, 1339-1346 (*McKee II*).) The trial court concluded the People met their burden, and the Court of Appeal affirmed, explaining, "We conclude the trial court correctly found the People presented substantial evidence to support a reasonable perception by the electorate [in Proposition 83] that SVP's present a substantially greater danger to society than do MDO's or NGI's, and therefore the disparate treatment of

25

Because Washington did not raise an equal protection challenge in the trial court (unlike the defendant in *McKee*), the People were not afforded an opportunity to make a showing as to why alleged SVP's may constitutionally be treated differently from other civil committees with respect to jury waiver protections. Thus, we do not have an appellate record on which to evaluate Washington's equal protection claim. However, "application of the forfeiture rule is not automatic." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293; accord, *Unzueta v. Akopyan* (2019) 42 Cal.App.5th 199, 215 ["'neither forfeiture nor application of the forfeiture rule is automatic'"].) Although Washington's attorney failed to argue that Washington was entitled to a jury trial absent a personal waiver by Washington after a jury trial advisement, it is hard to envision how counsel could have asserted this claim. Washington's attorney waived Washington's right to a jury trial, which, as we have concluded, was proper under the SVPA. The only way Washington could have asserted an equal protection challenge in the trial court would have been for his attorney to request the trial court advise Washington of his right to a jury trial and take a personal waiver of that right. Then, if the court declined to do so based on the absence of a requirement in the SVPA, Washington's attorney could have argued not doing so would violate equal protection principles. But presumably, Washington's attorney believed Washington wanted to proceed with a court trial (which may or may not have been the case), and thus, counsel would have been unlikely to demand the court advise Washington of his jury

---

SVP's under the Act is necessary to further the People's compelling interests of public safety and humane treatment of the mentally disordered." (*Id*. at pp. 1330-1331.)

trial right and take a personal waiver. Yet had the civil commitment proceeding been under the MDO or NGI statutes, the court would have been required to advise Washington of his right to a jury trial and to take his personal waiver of that right, to ensure he was aware of and making a knowing, intelligent, and voluntary waiver of that right. Under these unusual circumstances, we decline to find forfeiture based on Washington's failure to raise an equal protection challenge in the trial court.

This leaves us in the untenable situation that Washington has not forfeited his equal protection claim, but given the lack of a record in the trial court, we are ill equipped to address Washington's equal protection claim on appeal. Notably, the People in their respondent's brief relied solely on forfeiture and failed to address whether there is any justification for differential treatment of SVP's and other civil committees. And at oral argument, the Attorney General only argued as a justification for differential treatment of SVP's the greater danger they pose to society at issue in *McKee, supra*, 47 Cal.4th 1172.[10] Although the Court of Appeal in *McKee II, supra*, 207 Cal.App.4th at pages 1330

---

[10] The Attorney General also asserted SVP's pose a greater risk to vulnerable victims and, given the nature of their mental disorder, recidivism is more likely. These asserted justifications all relate to whether SVP's pose a greater danger to society. The Attorney General also suggested that the nature of the mental disorders suffered by SVP's could mean a hearing would be necessary on the capacity of an SVP to waive his or her jury trial right. It is not clear whether this would support greater or lesser protections for the SVP's right to a jury trial, but in any event, the People would need to show on remand that the ability of an SVP to understand a jury trial advisement differs from that of other civil committees, and that this difference justifies differential treatment.

27

to 1331 affirmed the trial court's finding on remand that the People had met their burden to show SVP's pose a greater danger to society than MDO's and NGI's, thereby justifying differential treatment as to the commitment term and burden to obtain release from commitment, we have difficulty seeing how the dangerousness of an SVP would justify denying an alleged SVP the procedural protections for the right to a jury trial afforded other civil committees, especially given the significant liberty interests at stake for an alleged SVP facing a potential indefinite commitment.

We therefore conditionally affirm the order declaring Washington to be an SVP and committing him to the California Department of State Hospitals for an indeterminate term. However, as in *McKee, supra*, 47 Cal.4th at pages 1208 to 1209, we remand for Washington to have an opportunity to raise an equal protection challenge to the SVPA based on the differential treatment of SVP's in that, unlike other civil committees, an alleged SVP is afforded only a court trial unless he or she affirmatively requests a jury trial, and further, the statute does not provide for a personal advisement of the alleged SVP's right to a jury trial. If Washington meets his burden on remand to show SVP's and other civil committees are similarly situated as to jury trial protections, the People must "demonstrate the constitutional justification" for the differential treatment. (*McKee*, at pp. 1208-1209.)

## DISPOSITION

The order declaring Washington to be an SVP and committing him to the California Department of State Hospitals for an indeterminate term is conditionally affirmed. We remand for Washington to have an opportunity to raise an equal protection

28

challenge to the SVPA's jury waiver provisions.  If the trial court determines there is an equal protection violation, the court shall vacate the order declaring Washington to be an SVP and set the matter for a jury trial, unless Washington provides a knowing and intelligent waiver of his right to a jury trial after being personally advised of that right.


FEUER, J.

We concur:


PERLUSS, P. J.


SEGAL, J.

29